# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
### (WHITE PLAINS)

-----------------------------------------------------------x

JOAN L. SMITH,

          Plaintiff,

          vs.                                       **Case No: 7:06-cv-14439-GAY**

KOHL'S DEPARTMENT STORES, INC.

          Defendants.

-----------------------------------------------------------x

## DEFENDANT, KOHL'S DEPARTMENT STORES, INC.'S
## MOTION FOR SUMMARY JUDGMENT

Defendant, Kohl's Department Stores, Inc. ("Kohl's"), through its undersigned counsel, and pursuant to *Federal Rule of Civil Procedure* 56, files its Motion for Summary Judgment, and in support thereof states as follows:

## I.    Introduction

The record is devoid of any fact issues as to the following dispositive facts: (a) Smith made sporadic complaints of racist remarks from co-employees, and very general complaints of her "beliefs" that people were racist against her, over her more than four-year employment with Kohl's, which are non-actionable, all of which were investigated if and when – on the rare occasions – that Ms. Smith gave enough information on which to base an investigation; (b) during the course of her employment, Smith made routine racist remarks against other coworkers that are well-documented and for which she was formally disciplined; (c) Smith never made a complaint of alleged racist discrimination against her through proper channels that was not fully investigated by management; (d) the alleged adverse action involved herein – termination -  was

the consequence of the *bona fide* and routine application of the corporate attendance policy. Ultimately, the situation was one in which Ms. Smith frequently made vague generalized claims of racism (despite repeated requests that she provide specific information) – quite often in response to disciplinary action taken against her for her own transgressions and improper racial remarks to other coworkers – which Kohl's would address as well as possible given the lack of information; when Ms. Smith provided specific information, Kohl's investigated and  generally determined her claims to be groundless.  A number of Ms. Smith's claims were made to, and addressed by, another black woman – Colleen Newton – who was unable to remember a complaint by Ms. Smith that Kohl's did not address.  Kohl's clearly had a well-designed and functioning policy and process for investigating and addressing claims of discrimination, as evidenced by Ms. Smith's own well-documented history of being formally disciplined for making inappropriate racial comments.  Finally, despite any beliefs Ms. Smith has, or any theory she may concoct, the *undisputed facts* are that the sole reason her employment at Kohl's came to an end was because she caused the termination of her employment by violating Kohl's clear "no call, no show" attendance policy.

## II.     Kohl's is Entitled to Summary Judgment

A party is entitled to summary judgment when that party can show, based on the pleadings, depositions, answers to interrogatories, admissions and affidavits, that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c); *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2nd Cir. 1998).   Summary judgment is an appropriate means of resolving discrimination cases lacking genuine issues of material fact.  *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2nd Cir. 2006).

<u>A) The Plaintiff Failed to Establish that the Termination of Her Employment was Retaliatory</u>

*1) Legal Standard*

To prove a *prima facie* case of retaliation under Title VII, a plaintiff must establish that (1) there was a statutorily protected participation; (2) the employer was aware of that participation; (3) an adverse employment action occurred; and (4) there was a causal link between the participation and the adverse employment action. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2nd Cir. 2006); *Feingold v. New York*, 366 F.3d 138, 156 (2nd Cir. 2004); *Raniola v. Bratton*, 243 F.3d 610, 624 (2nd Cir. 2001). To show "statutorily protected participation," the plaintiff must show that she opposed an unlawful employment practice which she reasonably believed occurred. *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2nd Cir. 1993). It is not enough for the employee merely to complain about a certain behavior of co-workers and rely on the employer to infer that discrimination has occurred. *See, e.g.*, *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411-12 (9th Cir. 1987)   To establish a causal link, the plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated. *Raniola*, 243 F.3d at 625. A defendant may rebut that *prima facie* case by showing legitimate reasons for the adverse employment action. *Raniola*, 243 F.3d at 625. Title VII's burden-shifting standard applies here. *Feingold*, 366 F.3d at 157; *Raniola*, 243 F.3d at 625; *Cosgrove*, 9 F.3d at 1038.

*2) The Plaintiff's Allegations and Evidence Do Not Establish Retaliation*

The facts regarding the termination of Ms. Smith's employment are straightforward (for the purposes of this analysis in this section only, Kohl's assumes that the first and third elements – participation and adverse action – were met): (1) Ms. Smith filled out a time off request and indicated that her last day off would be January 2, 2006, and thus her return-to-work date was

January 3, 2006; (2) Ms. Smith received a supervisor's required signed approval only to be off through January 2, 2006; (3) Ms. Smith did not return to work on January 3, 4 or 5, 2006; (4) because Ms. Smith did not return to work on those days, she was automatically classified as a "no call, no show" employee for three consecutive days; (5) in accordance with their policy, Kohl's Human Resources department made a *bona fide* inquiry into Ms. Smith's time off request and determined that she had only requested to be off until January 2nd; (6) Kohl's Personnel Policy, which is followed automatically and without exception, is that an employee who is a "no call, no show" for two consecutive days will be considered to have terminated their employment; (7) in accordance with Kohl's policy, Kohl's Human Resources department processed Ms. Smith's termination with approval from Nancy Thornton, the Human Resources manager; (8) at the time Kohl's terminated Ms. Smith's employment for violating the "no call, no show" policy, no one at Kohl's was considering terminating her employment for any other reason.

Kohl's termination of Ms. Smith's employment was thus simply the result of the "no-fault application" of the "no call, no show" policy. That policy is applied automatically and without exception. That policy was applied here by individuals who were entirely removed from any alleged racial or discrimination issues involving Ms. Smith; indeed, her own supervisors, who were intimately involved in her work and were aware of her transgressions and allegations, did not know she was going to be terminated until they received an email notification *after her employment had already been terminated*. The Plaintiff simply cannot prove that the decision-makers who approved the termination of her employment were aware of any protected activity in which she engaged – most importantly, there is no evidence that Joslin (the supervisor to whom the Plaintiff had most recently complained) was involved in the decision to terminate the Plaintiff's employment. *Douglas v. Eastman Kodak Co.*, 373 F. Supp. 2d 218, 224 (W.D.N.Y.

2005) (plaintiff failed to establish second element where plaintiff failed to establish that decision-makers who terminated plaintiff's employment were aware of plaintiff's prior protected activity); *Jones v. Potter*, 2007 WL 2071613 at *7-8 (E.D. La. July 16, 2007) (fact that supervisor who requested and issued disciplinary action was unaware of plaintiff's prior protected activity – and plaintiff's inability to show that supervisor harbored retaliatory animus – "eviscerate[d]" plaintiff's *prima facie* case and obviated any retaliatory connection).[1]

Similarly, the Plaintiff simply cannot prove that there was any connection – temporal or otherwise – between any such protected activity and the termination of her employment. Several months prior to her termination, the Plaintiff complained to Joslin that a coworker had called her (Ms. Smith) a "nigger;" prior to this instance, it appears that the last time Ms. Smith had made any type of formal complaint had been in November of 2003, two years earlier. This elapsed time weighs against a finding of retaliation. *See Douglas v. Eastman Kodak Co.*, 373 F. Supp. 2d 218, 224 (W.D.N.Y. 2005) (ten-month period between protected activity and termination weighs against finding of retaliation); *Mathis v. Leggett & Platt*, 2008 WL 124512 at *3 (11th Cir. Jan. 15, 2008) (plaintiff failed to establish causation where more than five months elapsed between protected activity and termination, and where reason for termination was "clearly" plaintiff's violations of company's attendance policy); *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 711 (7th Cir. 2002) (three-month period between protected activity and termination insufficient to make *prima facie* retaliation case); *Miles v. Bellefontaine Habilitation Ctr.*, 2007 WL 4365742 at *6 (E.D. Mo. Dec. 12, 2007) (three-month gap between protected activity and

---

[1] *See also Stewart v. Amazing Glazed, Inc.*, 2007 WL 3334973 at *10 (W.D. Pa. Nov. 8, 2007) (plaintiff's failure to show that those who made termination decision were aware of his protected acts "raise[d] serious questions about whether termination was retaliatory"); *Garrot v. Bd. of Regents of the Univ. of Wisc. Sys.*, 381 F. Supp. 2d 927, 934 (W.D. Wisc. 2005).

termination "is not indicative of an unlawful motive" on part of employer in terminating plaintiff); .

Importantly, Kohl's has provided evidence that the "no call, no show" policy is both race- and gender-neutral.  More specifically, during Kohl's fiscal year 2005, Kohl's terminated 32 employees for violating the "no call, no show" policy.  (Leventoff Affidavit Ex. A at D-00035). Of those employees, three (including Ms. Smith) were black, nine were Hispanic, nineteen were white and one was American Indian.  (*Id*.).  Seventeen of those former employees were male, and fifteen were female.  (*Id*.).  There is thus simply no evidence to support the Plaintiff's assertion that Kohl's applied the "no call, no show" policy in a discriminatory fashion.  *See Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 909 (8th Cir. 1999) (plaintiff, who failed to show that employer enforced attendance policy in discriminatory manner, failed to create factual dispute as to pretext and failed to offer evidence from which trier of fact could infer discrimination was true reason for termination); *Jones v. Potter*, 2007 WL 2071613 at *7 (E.D. La. July 16, 2007) (evidence that supervisor enforced rules and did so in the case of other employees who violated attendance rules supported legitimate non-retaliatory basis for action); *Wilson v. TecStar Mfg. Co.*, 2007 WL 201051 at *10 (E.D. Wis.) (employer entitled to summary judgment on retaliation claim where record demonstrated that employer did not tolerate violations of attendance policy regardless of race or whether employee engaged in protected activity).

In following its Personnel Policy regarding "no call, no show" employees in Ms. Smith's case, Kohl's has demonstrated a legitimate non-discriminatory reason for terminating Ms. Smith's employment.  *See Douglas*, 373 F. Supp. 2d at 224 (discipline for violation of

attendance policy was legitimate nondiscriminatory business reason); *Becker v. Ulster County*, 167 F. Supp. 2d 549, 554 (N.D.N.Y. 2001).[2]

There is no evidence to the contrary. Accordingly, Kohl's is entitled to summary judgment on Ms. Smith's claim for retaliation. *See, e.g., McLee v. Chrysler Corp.*, 109 F.3d 130, 135-37 (2nd Cir. 1997) (employer entitled to summary judgment and order dismissing complaint on retaliation claim where record established that employee was terminated for race-neutral reasons, and "no rational trier of fact could infer a discriminatory motive from this sequence"); *Barrow v. Ford Motor Co.*, 2007 WL 1655660 at *17 (W.D.N.Y. June 5, 2007) (employer entitled to summary judgment where record was "devoid of any evidence suggesting even a remote possibility that the legitimate and nondiscriminatory reasons articulated . . . are merely pretext for racial discrimination").[3]

### 3) Monique Cromwell's Testimony Does Not Create a Material Issue of Fact

Kohl's anticipates that the Plaintiff will assert that an apparent factual dispute exists regarding Ms. Smith's alleged conversation with Joslin regarding her true return date, and will base this assertion on Monique Cromwell's statement regarding the incident. Even assuming that Cromwell's statement is entirely accurate and reliable, no material issue of fact is created because there is simply no evidence that either (1) Ms. Smith's conversation with Joslin, or (2)

---

[2] *See also Allen v. Nat'l RR Passenger Corp. (Amtrak)*, 228 Fed. Appx. 144, 248-49 (3rd Cir. 2007) (plaintiff failed to establish causal link where punishment based on, *inter alia*, violation of attendance policy); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 335-36 (5th Cir. 2005); *Miles v. Bellefontaine Habilitation Ctr.*, 2007 WL 4365742 at *7 (E.D. Mo. Dec. 12, 2007) (employer, who had attendance policy providing that after third violation employee was subject to dismissal, and who terminated plaintiff after plaintiff was absent for three consecutive days, articulated legitimate nondiscriminatory reason for terminating plaintiff); *Middleton v. Frito-Lay, Inc.*, 68 F. Supp. 2d 665, 672 (D. Md. 1999) (fact that plaintiff's termination coincided with final violation of attendance policy, and not plaintiff's protected activity which had occurred four months prior, supports argument that reason for dismissal was poor attendance, not retaliation).

[3] *See also Lewis*, 278 F.3d at 711 (defendant entitled to summary judgment even if plaintiff could establish *prima facie* case because defendant presented legitimate nondiscriminatory reason for termination – failing to call in or appear for work for three consecutive days – and plaintiff had no evidence to rebut it); *Dortch v. Mem. Herman Healthcare Sys.-S.W.*, 525 F. Supp. 2d 849, 865 (S.D. Tex. 2007) (employer entitled to summary judgment because employee could not respond to legitimate nondiscriminatory reason for termination, which was his failure to comply with employer's "no-call/no-show" policy).

Joslin herself, had any role whatsoever in the decision to terminate Ms. Smith's employment. At best, Cromwell's statement creates questions as to who said what to whom, and who heard what. These questions, however, have no involvement in or impact on the material issue regarding a claim of retaliation, namely, *whether Ms. Smith was terminated for participating in protected activities*. Whether there was any confusion as to Ms. Smith's return date is immaterial because the undisputed facts are that Kohl's Human Resources department – which was entirely detached from any issues surrounding Ms. Smith's time off request form – determined, after a *bona fide* inquiry, that her time off request only went through January 2nd, and she had been a "no call, no show" for the three consecutive subsequent days, and terminated her employment accordingly. It is also rather important to note that Cromwell admits that *she did not actually hear* the alleged conversation between Smith and Joslin pertaining to Ms. Smith's return to work on January 6, 2006. (Cromwell Dep. at 21, 23-24; Cromwell Dep. Ex. 2 at D-00109). Accordingly, any attempt by the Plaintiff to create an issue of fact from these circumstances must fail.

B) The Plaintiff Has Failed to Prove Her Disparate Treatment Claim

*1) Legal Standard*

To establish a *prima facie* case of discrimination, the plaintiff must show that: (1) the plaintiff is a member of a protected class under Title VII; (2) an adverse employment action occurred; (3) that plaintiff was treated differently than similarly situated employees who were not members of the protected class; and (4) that sufficient evidence exists to infer a nexus or causal connection between membership in a protected class and the disparate treatment alleged. *Feingold*, 366 F.3d at 152. Once a plaintiff establishes a *prima facie* case, a presumption is created that the employer unlawfully discriminated against the employee. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). At that point, the burden of production shifts to the

defendant to rebut the plaintiff's *prima facie* case, by producing evidence that the adverse employment actions were taken for legitimate reasons. *St. Mary's Honor Center*, 509 U.S. at 506-507; *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To do so, the defendant must clearly set forth, through admissible evidence, reasons for its action that, if they are believed by the trier of fact, would support the conclusion that the employment action was not based on unlawful discrimination. *St. Mary's Honor Center*, 509 U.S. at 507. The defendant does not have to persuade the court that it was actually motivated by the proferred reasons; instead, the defendant must only raise a genuine issue of fact as to whether it actually discriminated against the plaintiff. *Burdine*, 450 U.S. at 254-55.

The burden of persuasion, however, remains with the plaintiff, such that if the defendant carries its burden of production, the presumption is rebutted, and the plaintiff must then demonstrate that the defendant's proferred reasons were not the true reason for the employment action, but instead were mere pretexts for discrimination. *St. Mary's Honor Center*, 509 U.S. at 507-508; *Burdine*, 450 U.S. at 253. The plaintiff may do this in several ways: first, by showing that the defendant's proferred nondiscriminatory reasons should not be believed; or, second, by showing that, based on all of the evidence, the defendant's actions were more likely motivated by discriminatory reasons than by the defendant's proferred reasons. *Feingold*, 366 F.3d at 152. If the plaintiff fails to offer sufficient evidence to create a genuine issue of material fact as to whether the defendant's proferred reasons are pretextual, the defendant is entitled to summary judgment. *Ferraro v. Kellwood Co.*, 440 F.3d 96, 100 (2nd Cir. 2006). It is not sufficient for the plaintiff to offer merely conclusory allegations and assertions. *McWhite v. N.Y. City Housing Auth.*, 2008 WL 1699446 at *9 (E.D.N.Y. Apr. 10, 2008); *Ortiz-Moss v. N.Y. City Dept. of Transp.*, 2008 WL 938941 at *5 (S.D.N.Y. Apr. 7, 2008). A plaintiff is not allowed to recast an

employer's preferred nondiscriminatory reasons or substitute his business judgment for that of the employer; provided that the preferred reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.  *See, e.g.*, *E.E.O.C. v. Town of Huntington*, 2008 WL 361136 at *5 (E.D.N.Y. Feb. 8, 2008); *Bennett v. Verizon Wireless*, 2008 WL 216073 (W.D.N.Y. Jan. 24, 2008).

> *2) The Plaintiff's Allegations and Evidence Do Not Prove Disparate Treatment*

The Plaintiff has failed to carry her burden of proving the elements of a disparate treatment claim.  Assuming¸ *arguendo*, that the first two elements are established, she has simply failed to offer even a shred of evidence that she was treated differently than similarly situated employees who were not members of her protected class and that any evidence exists to infer a causal connection between her membership in a protected class and the disparate treatment alleged.  She has offered no evidence, numerical, narrative, or otherwise, showing how the termination of her employment caused her to be treated differently than anyone else.  In fact, the evidence is directly to the contrary because, as discussed above, during the fiscal year in which Kohl's terminated Ms. Smith's employment for violating the "no call, no show" policy, Kohl's applied that policy in a race-neutral fashion: of the thirty-two employees terminated for violating that policy, three were black, nineteen were white, nine were Hispanic and one was American Indian.  *See, e.g.*, *Brown v. The Pension Boards*, 488 F. Supp. 2d 395, 406 (S.D.N.Y. 2007) (plaintiff failed to demonstrate that attendance policy was unevenly applied, and plaintiff thus failed to establish that trier of fact could find that termination was due to discrimination).[4]

---

[4] *See also Trammell v. Baltimore Gas & Elec. Co.*, 279 F. Supp. 2d 646, (D. Md. 2003) (employer entitled to summary judgment where plaintiff could offer no evidence to demonstrate that employer disciplined him for three unexcused absences, but not former coworkers, was pretext); *Mathews v. Giant Food, Inc.*, 187 F. Supp. 2d 486, 489-90 (D. Md. 2002) (plaintiff who failed to show that non-minority employees that also violated attendance policy

Even assuming the Plaintiff has carried her burden – which she has not for the reasons explained above – the termination of Ms. Smith's employment had nothing to do with race. Instead, Kohl's terminated her employment automatically after she violated a race-neutral "no call, no show" policy. The policy was applied and followed by individuals who had no direct involvement in Ms. Smith's alleged complaints regarding racial issues. Kohl's is therefore entitled to summary judgment on the Plaintiff's discrimination claim. *See Cross v. FFP Operating Partners, LP*, 73 Fed. Appx. 46, 47 (5th Cir. 2003) (affirming summary judgment where plaintiffs were terminated for violating attendance policy, there was no evidence of discriminatory motive in termination, no evidence that employer treated plaintiffs differently than other non-minority employees, and employer applied company policies – terminating employees of all races and genders – in racially non-discriminatory manner); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1114-15, 118 (7th Cir. 1992) (employer justified in terminating employee who was absent for three days and did not explain absence until her return, and, thus, employer demonstrated legitimate nondiscriminatory reason for termination; employer entitled to summary judgment because no reasonable trier of fact could find that reason for discharge was pretext); *Davis*, 161 F. Supp. 2d at 1322 (employer entitled to prevail on discrimination claim where there was "no question" that employer had reasonable and legitimate grounds for terminating plaintiff due to violations of attendance policy and record was "devoid of evidence that this reason, if exercised, would have been racially discriminatory").

Ultimately, this case boils down to the fact that, in order for the Court to find for the Plaintiff, the Court would have to believe that: (1) the entire termination scenario – *which starts with Ms. Smith herself writing down specific dates on her request for time off* – was some sort of

---

were not terminated failed to establish discriminatory discharge claim); *Davis v. Qualico Misc., Inc.*, 161 F. Supp. 2d 1314, 1321 (M.D. Ala. 2001) (plaintiff failed to prove *prima facie* case where he failed to prove existence of similarly situated employees and that any such employees were treated differently).

racially-motivated scam that started with the Plaintiff's supervisor, Joslin, "tricking" the Plaintiff about her return date so that she would return days late and be in violation of the attendance policy; (2) then this scam was approved and joined-in by Mangini, Pooley, Leventoff, Meghan Fox and the human resources manager in the home office in Wisconsin, Hart; (3) all this while Smith's first, most reliable, extemporaneous excuse as to her absence, made in front of three witnesses, was that she, Smith, had made a mistake with respect to the return date.  Needless to say, there is no evidence from which such a wild scenario may reasonably inferred.

### C. The Plaintiff Failed to Establish the Existence of a Hostile Work Environment

*1) Legal Standard*

To establish a hostile working environment claim, a plaintiff must show: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment must have been based on a protected characteristic of the plaintiff; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive working environment; and, (5) the employer is responsible for that environment.  Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . .."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted).   Whether an environment is hostile must be determined by the circumstances, including:

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Harris*, 510 U.S. at 23.  In addition, the plaintiff must establish that "a specific basis exists for imputing the conduct that created the hostile environment to the employer."  *Petrosino v. Bell Atlantic*, 385 F.3d 210, 221 (2nd Cir. 2004) (internal citations and quotation omitted).  Where the

harassment complained of was by a coworker (*i.e.*, not a supervisor), the plaintiff must demonstrate that the employer either provided no reasonable avenue for complaint, or was aware of the harassment but did nothing to stop it. *Whidbee v. Garzarelli Food Specialties, Inc.*, 224 F.3d 62, 72 (2nd Cir. 2000) (noting, however, that the employer need not be successful in preventing harassment); *Distasio*, 157 F.3d at 63.

The relevant conduct should be examined in context, not as isolated acts, and the court should determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment. *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 241 (2nd Cir. 2007); *Feingold*, 366 F.3d at 149. The Supreme Court has made it clear that this is a demanding standard, and "that conduct must be extreme to amount to a change in terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998); *see also Feingold*, 366 F.3d at 150 ("the standard for establishing a hostile work environment is high"). The Supreme Court has further stated that, properly applied, the standards for judging "hostility" under Title VII are "sufficiently demanding" to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 778 (internal citations and quotations omitted).

A plaintiff must, under an objective standard, show that the environment is one that a reasonable person would find hostile or abusive and the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2nd Cir. 2006). The Supreme Court has clearly stated that the "mere utterance of an epithet which engenders offensive feelings

in an employee does not sufficiently affect the conditions of employment to implicate Title VII. *Harris*, 510 U.S. at 21 (internal citations and quotations omitted).  In other words, "[h]ostile work environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct," and are based on the "cumulative effect of individual acts."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  "Minor incidents do not merit relief." *Kassner*, 496 F.3d at 240.  Isolated incidents typically do not rise to the level of a hostile work environment, and "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  *Demoret*, 451 F.3d at 149 (internal citation and quotation omitted); *Petrosino*, 385 F.3d at 223; *Alfano v. Costello*, 294 F.3d 365, 374 (2nd Cir. 2002).  Finally,

> [f]or racist comments, slurs and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. . ..  *[M]ere generalized allegations that racist remarks abound in the workplace will not provide a sufficient basis for proceeding to trial*.

*Kemp v. A&J Produce Corp.*, 164 Fed. Appx. 12, 14-15 (2nd Cir. 2005) (summary order) (emphasis supplied); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2nd Cir. 1997).

*2) The Plaintiff's Allegations and Evidence Do Not Establish a Hostile Environment*

Ms. Smith's deposition contains the following statements by her: (1) she was called a "nigger" by coworkers on two occasions, once in 2002 and once in 2005; (2) there was an incident in 2005 in which she was kicked and called a "nigger" by a coworker; (3) a coworker called her an "old black lady;" (4) there was occasional racist graffiti on the bathroom wall; (5) in 2004, Pooley saw her reading a book about Rosa Parks, and stated that she would get off the bus if he were there, and then laughed; (6) Pooley made a comment about "whipping;" (7) she

was called names constantly.[5]   Any allegations that racial comments were "constant," or "every day," or "many times," or the like are not sufficient under the standard enunciated by the Second Circuit, *supra*, and thus should not be considered in this analysis.  *See Smith v. Niagara Frontier Trans. Auth.*, 2007 WL 1119797 at *6 (W.D.N.Y. April 16, 2007) (alleged "proof" of racial comments occurring "on one or more occasions" or at "numerous" or "various" times did not provide court with facts specific enough to defeat summary judgment).

Thus, the Plaintiff has pointed to six particular incidents of racially-discriminatory comments directed at her, along with racist graffiti, over the course of roughly four years. Again, assuming the *bona fides* of Smith's deposition claims, Kohl's urges the Court to consider the fact that the Plaintiff's well-documented violations of Kohl's policy for repeatedly making racially-derogatory comments to coworkers contributed as much, if not more, to her work environment than any comments to which she herself was, allegedly, subjected.  The Court should thus consider, as part of the totality of the circumstances, the Plaintiff's own *significant* contributions to any alleged uncomfortable atmosphere in which she found herself.  *See* Defendant's Local Rule 56.1 Statement of Undisputed Facts at ¶¶ 15-32.

Ultimately, the Plaintiff's allegations do not describe a workplace that constitutes a hostile work environment. *See Smith v. Niagara Frontier Trans. Auth.*, 2007 WL 1119797 at *6-7 (W.D.N.Y. April 16, 2007) (granting summary judgment because no reasonable trier of fact could conclude that workplace was so permeated with racially discriminatory insult as to alter conditions of employment, where, *inter alia*, supervisor repeatedly referred to "niggers," and called plaintiffs "dumb nigger" and "the kind of nigger that can't be controlled"); *Augustin v. Yale Club of New York City*, 2006 WL 2690289 at *22 (S.D.N.Y. Sept. 15, 2006) (five

---

[5] While Kohl's disputes that many of these incidents occurred, for the purposes of the summary judgment analysis, Kohl's will view the facts in the light most favorable to Ms. Smith.

comments over five years, including "black bitch" and "fucking negrita," while deplorable, was infrequent and sporadic and thus insufficient as a matter of law to maintain hostile work environment claim); *Pagan v. N.Y. St. Div. of Parole*, 2003 WL 22723013 at *6 (S.D.N.Y. Nov. 18, 2003) (defendant entitled to summary judgment because series of 5 racially derogatory comments did not amount to "extremely serious" behavior required for hostile work environment under Title VII); *Stembridge v. City of New York*, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) ("seven instances over three years does not create a work environment permeated with racial hostility"); *Brown v. Middaugh*, 41 F. Supp. 2d 172, 187-88 (N.D.N.Y. 1999) (although plaintiff was called, "nigger," "lazy nigger," "piece of shit nigger," and "good for nothing nigger," and also heard that other employees used racial slurs and witnessed employees using Nazi slogans and salutes, such behavior was not sufficiently severe or pervasive and thus hostile work environment claim could not survive summary judgment); *Carter v. Cornell Univ.*, 976 F. Supp. 224, 232 (S.D.N.Y. 1997) (plaintiff failed to prove hostile work environment where there were six racial comments made over a period of years); *Williams v. Port Auth. of N.Y. & N.J.*, 880 F. Supp. 980, 991-92 (E.D.N.Y. 1995) (five racial slurs that were sporadic and episodic in nature were insufficient, particularly where employer took reasonable measures to address concerns about racial disharmony).[6]

### 3) Kohl's Defense to the Plaintiff's Hostile Work Environment Claim

When workplace conduct allegedly gives rise to a hostile work environment, and that harassment is "attributable to a *co-worker*, rather than a supervisor . . . the employer will be held

---

[6] S*ee also Thomas v. Amtech*, 464 F. Supp. 2d 688, 698-99 (N.D. Ohio 2006) (granting summary judgment on hostile work environment claim where African American employee was subjected to: (1) finding a drawing inside his locker showing monkeys and words to the effect that "we don't need more monkeys;" (2) finding items in his locker including broken glasses, dead bird, live worms and rodents; (3) his lunch was stolen and his uniforms placed in the trash; (4) he saw a noose and a Ku Klux Klan hood at work; and (5) a coworker used the word, "nigger" to describe him).

liable only for its own negligence." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2nd Cir. 1998) (emphasis supplied).  The employer will be liable only if the plaintiff can "demonstrate that the company either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Distasio*, 157 F.3d at 63 (internal citations and quotation omitted); *see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 72 (2nd Cir. 2000).  "To be sure, an employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in preventing and correcting . . . harassing conduct." *Whidbee*, 223 F.3d at 72 (internal citation and quotation omitted).  The vast majority of Ms. Smith's claims are related to incidents involving co-workers.

In response to hostile work environment claims allegedly caused by a *supervisor*, an employer may raise a defense that:

> (1) the employer exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Ferraro v. Kellwood Co.*, 440 F.3d 96, 101 (2nd Cir. 2006) (internal citation, quotations and punctuation omitted); *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 268 (2nd Cir. 1999).   An employer may satisfy its burden under these elements by, respectively, showing the existence of an anti-harassment policy during the period of the plaintiff's employment, and showing that an employee unreasonably failed to use the employer's complaint procedure.  *Ferraro*, 440 F.3d at 102.

Ms. Smith pointed to only two alleged incidents – both of which are hotly disputed – involving a supervisor, namely, Pooley: that he made a comment about Rosa Parks and a comment about "whipping."  Ms. Smith did not complain about the "whipping" comment, and alleges that she complained about the "Rosa Parks" comment, but did not do so in writing, nor

can she remember when she complained; the only supervisor who remembers the Plaintiff talking about the incident at all stated that the Plaintiff did so in passing as part of a generalized statement, *not as a formal complaint*.

Significantly, the human resources assistant supervisor during the majority of the time encompassing Smith's employment, Coleen Newton – herself a black woman – recently testified that if the Plaintiff had any issues or made a complaint of discrimination, Kohl's would investigate.  (Newton Dep. at 15-16, 18).  Newton also testified that she could not recall a time that Joan Smith made a specific complaint that was not formally investigated.  (*Id.* at 59-60). Most of the complaints in the files, which actually pertain to complaints *against* Smith were investigated by Newton, and these contain corroborating statements of coworkers to Smith's abusive conduct and language, for which Ms. Smith was formally disciplined.  (*See, e.g.* Newton Dep. Ex. C at D-00169; Newton Dep. Ex. D at D-00043-00044; Newton Dep. Ex. E at D-00047-00049; Newton Dep. Ex. H at D-00066-00070; Leventoff Affidavit Ex. B at D-00063).[7]

Kohl's has clearly demonstrated that: (1) it had a particular and comprehensive anti-discrimination policy in place; (2) the Plaintiff was well aware of the policy and the means by which she was to make her complaints; and (3) the Plaintiff acknowledged, by her signature, her awareness of Kohl's policies on two separate occasions.  Kohl's has, therefore, met its burden in this regard in defending against any supervisor-created liability.  *Ferraro*, 440 F.3d at 102-103; *Woodcock v. Montefiore Med. Ctr.*, 2002 WL 403601 at *7 (E.D.N.Y. Jan. 28, 2002).  The Plaintiff also clearly cannot assert coworker-based liability on the grounds that Kohl's had no reasonable avenue for complaint.

---

[7] Any argument by the Plaintiff that Kohl's ignored or failed to address complaints of racial discrimination necessarily fails, given the Plaintiff's well-documented extensive history of being formally disciplined for making inappropriate racial remarks; any claim by the Plaintiff that Kohl's discriminated against her in particular by failing to investigate her own particular complaints is unsupported by the evidence and thus utterly groundless and entirely speculative.

The Plaintiff has admitted that she did not ever speak to anyone at Kohl's "Respect Hotline" regarding her complaints of racism as they related to being called a "nigger" (and only called twice).  She has admitted that she did not file complaints with regard to the racist graffiti, (Smith Dep. at 456), and could not actually say whether she actually filed complaints regarding other issues.  Those responsible for addressing employee complaints have testified that rather than making specific formal complaints, the Plaintiff would make sporadic general allegations but fail to provide specifics.  Upon investigation, her general allegations almost invariably turned out to be baseless.  Further, it has been admitted by everyone that Smith felt free to complain and felt comfortable doing so, especially to the assistant H.R. manager, Ms. Newton – herself a black woman – who testified that she could not recall a time that Joan made a complaint that was not investigated.  (Newton Dep. at 18, 59-60).  In fact, Kohl's *did* investigate all of the Plaintiff's claims (many of which arose only after a coworker first complained about the Plaintiff) of discriminatory treatment.  (Mangini Dep. at 17-18, 20-21, 25-27 ("every time [the Plaintiff] filed a formal complaint, meaning it wasn't through hearsay . . . we would do an investigation;" "If she came to us with a specific issue, we would investigate it." "If Joan came to us, it did get investigated."); Newton Dep. at 18).

Therefore, any assertion of coworker-created liability must fail because the Plaintiff cannot prove either avenue for relief – that Kohl's lacked a reasonable avenue for complaint or that Kohl's was aware of the Plaintiff's complaints but took no action.  Assertions of supervisor-created liability (the two alleged incidents with Pooley) must similarly fail because Kohl's had a reasonable policy in place and because the Plaintiff has no concrete evidence that she actually took advantage of Kohl's available resources.  *Woodcock*, 2002 WL 403601 at *7 (where plaintiff did not specifically complain to anyone about alleged discrimination, she did not

reasonably avail herself of employer's complaint procedures, and, thus, no liability could be imputed to employer).

D. The Plaintiff's State Law Claims Similarly Fail

Because the standard of liability under the New York State Human Rights Law is the same as for the related federal claims, *Demoret v. Zegarelli*, 451 F.3d 140, 153-54 (2nd Cir. 2006); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2nd Cir. 2006*); Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2nd Cir. 2006), Kohl's arguments regarding Ms. Smith's various federal law claims apply with equal force to her state law claims, and Kohl's constructively applies them accordingly. *See also Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2nd Cir. 1999). Therefore, for the same reasons that Kohl's is entitled to summary judgment on the Plaintiff's federal law claims, Kohl's is likewise entitled to summary judgment on the Plaintiff's state law claims.

## III.   Conclusion

The facts, even when viewed in the light most favorable to the Plaintiff, (1) do not establish that the termination of her employment was caused by discrimination; (2) do not establish that the termination of her employment was retaliatory; and (3) do not establish the existence of a hostile work environment. Instead, the facts clearly demonstrate that the Plaintiff's employment was terminated because she violated a clear attendance policy.

WHEREFORE, for all of the foregoing reasons, Kohl's Department Stores, Inc. respectfully requests that the Court enter summary judgment in its favor on all of the Plaintiff's claims.

Respectfully submitted:

Michael B. Buckley, Esq.
NY. Bar No.:  MB4797
mbuckley@buckleyandfudge.com
Jill E. Sodafsky, Esq.
NY. Bar No.:  JS8564
jsodofsky@buckleyandfudge.com
**Buckley & Fudge, P.A.**
26 Broadway, Suite 707
New York, NY 10004
Telephone:  212-514-7400
Facsimile:  212-514-7404

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 30, 2008, I electronically filed the foregoing *Motion for Summary Judgment* with the Clerk of the Court by using the ECF system which will send a notice of electronic filing to the following individuals:

**Stephen Bergstein, Esq.**
Bergstein & Ullrich, LLP
15 Railroad Avenue
Chester, NY 10918
Telephone:  (845) 469-1277
Facsimile:  (845) 469-5904
Email: steve@tbulaw.com
Attorney for Plaintiff, JOAN L. SMITH

/s/ Michael B. Buckley
**MICHAEL B. BUCKLEY, ESQUIRE**
New York Bar No.:  MB4797
mbuckley@buckleyandfudge.com
**JILL E. SODAFSKY, ESQUIRE**
NY. Bar No.:  JS8564
jsodofsky@buckleyandfudge.com
**BUCKLEY & FUDGE, P.A.**
Buckley & Fudge, P.A.
26 Broadway, Ste 707
New York, NY 10004
Telephone:  212-514-7400
Facsimile:  212-514-7404
Attorneys for Defendant, KOHL'S
DEPARTMENT STORES, INC.